Argued October 16, 1973, reversed and remanded May 23, 1974

BRYANT, *Appellant, v.* SHERM'S THUNDERBIRD
MARKET ET AL, *Respondents.*

522 P2d 1383

*Walter D. Nunley,* Medford, argued the cause and filed briefs for appellant. With him on the reply brief was Allen G. Drescher.

*James H. Gidley,* Portland, argued the cause for respondent Sherm's Thunderbird Market. With him on the brief were Cosgrave & Kester, Portland.

*William V. Deatherage,* Medford, argued the cause for respondent Market Supply Company, Inc. With him on the brief were Frohnmayer & Deatherage, Medford.

TONGUE, J.

This is an action for personal injuries sustained when plaintiff fell while shopping in a supermarket in Medford. The case was tried before a jury, which returned a verdict in favor of the defendant-owner after nonsuits had been granted to other defendants. Plaintiff appeals from the resulting adverse judgment.

Plaintiff's first assignment of error is that the trial court erred in granting an involuntary nonsuit to defendant Market Supply Company, Inc.[1] Accordingly, we must review the evidence.

In September 1969 defendant Sherm's Thunderbird Market (Market) engaged defendant Market Supply Company, Inc. (Market Supply), to furnish and install new and additional refrigeration produce cases at one end of its store. The old produce cases were to be moved across a 10-foot aisle and the new cases put in their place. In order to connect refrigeration lines, water lines and drain lines with the new cases it was necessary to cut trenches across the aisle in the existing concrete floor.

---

[1] A voluntary nonsuit was granted as to the remaining defendant, Sims Electric of Medford, Inc.

The manager of Market also engaged Modern Plumbing to do the trenching and plumbing work. He testified, however, that Market Supply "directed the plumbers and electricians [hired by other contractors] as to what was to be done and where it was to be done and when it was to be done." To the same effect, the field supervisor for Modern Plumbing testified that he was instructed "to do what Market Supply said." He also testified that he suggested closing off the area, but that suggestion was rejected. Although most of the heavy work was done at night, that section of the store remained open to customers during the daytime.

Modern Plumbing cut the trenches, including one 10-foot trench 12 inches wide and 12 inches deep, running across the aisle at right angles near one end of the aisle. Modern Plumbing then completed the plumbing work, made a plywood cover for the trench from a sheet of plywood eight feet long, and left the premises on September 19.

The Modern Plumbing supervisor testified that the covering went "all the way across the trenches." The manager of Market testified, to the contrary, that the cover left a two-foot gap next to the new cases, but that there was no uncovered area next to the old cases at the location when plaintiff fell.

Market then placed a piece of carpeting over the plywood cover to make it easier for shoppers with carts to cross. The manager also testified that warning signs were placed in the area and that if he had seen anything that he thought was hazardous he would have taken charge and would have had it corrected, but that he never saw the trench uncovered during regular store hours.

The supervisor for Modern Plumbing testified that on September 22 he went back to the store to "check" and observed employees of Market Supply laying refrigeration lines in the trench, which was then "open." He also testified that none of his employees worked on that job between September 19 and some date after the accident.

On the afternoon of September 24, 1969, plaintiff went to the market to shop. On the morning of that day, according to another witness, the plywood cover was over the trench, but a part of the trench was "exposed" at the "left side" so as to make tubing or cables in the trench visible. No warning signs could be recalled by that witness.

Plaintiff testified that as she entered the produce section on the same "left side" area, she stumbled and fell, with her toes "hooked" under some cables in the trench. She also testified that although she saw what looked like a rug which may have been over the trench, that portion of the trench was not covered by a plywood cover and that she could see the exposed pipes or cables.

1. *Liability of contractor who creates dangerous condition.*

Under these facts we hold that the trial court erred in granting the motion of Market Supply for an involuntary nonsuit.

Defendant Market Supply contends that:

"There was no evidence to show any agency or master-servant relationship between Market Supply and the other independent contractors or Sherm's Thunderbird Market. Market Supply had no right to control the alleged dangerous condition

of the floor where plaintiff fell. There was no evidence to show that Market Supply had any activity with the trench or plywood covering on the day of plaintiff's fall."

Restatement of Torts 2d § 383 (1965), states the following rule, which we believe to be the correct rule for application under the facts of this case.

"One who does an act or carries on an activity upon land on behalf of the possessor is subject to the same liability, and enjoys the same freedom from liability, for physical harm caused thereby to others upon and outside of the land as though he were the possessor of the land."[2]

■ This includes the duty of the owner of a self-service store to keep passageways used by customers in a reasonably safe condition for customers whose attention may be diverted. See *Miller v. Safeway Stores*, 219 Or 139, 153, 312 P2d 577, 346 P2d 647 (1959).

■ We believe that the jury could properly find from the evidence in this case that even if Market Supply was not a "general contractor" in the usual sense, with overall responsibility for the entire job, it at least shared responsibility with Sherm's Market for the proper and safe conduct of the work, including the covering of the trench. In any event, we believe that the jury could properly find from the testimony that

---

[2] In addition, Restatement of Torts 2d § 384 (1965), states as follows:

"One who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom from liability, as though he were the possessor of the land, for physical harm caused to others upon the outside of the land by the dangerous character of the structure or other condition while the work is in his charge."

after the trench was opened and cut by Modern Plumbing at a location in accordance with sketches prepared by Market Supply, its own employees not only installed refrigeration lines in that trench and removed the plywood and carpet covering for that purpose, but that Market Supply employees did that work two days before the accident and were the last ones to do any work relating to the trench prior to the accident. Based upon that evidence it was a jury question whether Market Supply employees did or did not properly replace that covering over the trench at the place where the accident occurred and whether, if they did not do so, the trench and its covering continued in that condition until the time of the accident two days later.[9]

## 2. *Liability of owner for negligence of contractor.*

Plaintiff's second assignment of error is that the trial court erred in withdrawing from the jury the allegation of plaintiff's complaint that defendant Market "Failed to exercise proper or any control or supervision over the agents and employees of Market Supply Company, Inc., which had been hired to alter and repair the premises and to install refrigeration equipment therein."

Defendant Market contends, to the contrary, that Market Supply "was an independent contractor and Sherm's Thunderbird Market had no duty, under the facts of this case, to supervise the work of the inde-

---

[9] By the terms of ORS 41.360 (32) it is a disputable presumption that "A thing once proved to exist continues as long as is usual with things of that nature." Whether or not this statute is applicable in this case as a statutory presumption, the jury could properly draw such an inference from all of the testimony in this case. See 2 Wigmore on Evidence (3d ed 1940) 412-417, § 437. Cf. Jamerson, Adm'x v. Witt, Executrix, 215 Or 227, 237, 332 P2d 1054 (1959).

pendent contractor," with the result that this allegation was properly withdrawn.

This conclusion would be reached by reasoning substantially as follows: (1) That on a theory of vicarious liability, Market Supply was an independent contractor, with the result that Sherm's Market had no right to control the manner and method of its work, including any right of supervision, and thus had no vicarious liability for its negligence, and that while there are exceptions to this rule, this case does not fall within any of such exceptions, and (2) that this case was properly submitted to the jury on a theory of the direct or personal duty of the owner of a store to an invitee, rather than on a theory of vicarious liability; that such a direct or personal duty does not include the duty to supervise the activities of an independent contractor, and that, in any event, there was no evidence of any lack of care concerning supervision or any evidence showing any connection between the breach of such a duty and the injuries claimed by plaintiff.

We do not, however, agree with the analysis for two reasons:

■ (1) Even if, as contended by Sherm's Market, the jury could properly find that Market Supply was an independent contractor, it does not follow that because Sherm's Market would then have no right to control the details of the work of Market Supply it (Sherm's Market) would not be vicariously liable for any negligence by Market Supply. On the contrary, in *Lipman Wolfe v. Teeples & Thatcher*, 268 Or 578, 522 P2d 467 (1974), decided this day, this court held that the owner of a store cannot delegate the duty "to keep

the premises reasonably safe for business visitors," but that if he entrusts to an independent contractor construction, repair or other work in his store he is subject to the same liability to business visitors as though he had retained the work in his own hands. Thus, if the jury found in this case that Market Supply was an independent contractor, but was negligent, Sherm's Market would still be liable on a theory of vicarious liability. It follows that under such a theory Sherm's Market would be liable regardless of whether or not it supervised the work of Market Supply, with the result that such a specification of negligence would be surplusage and with the further result that there was no error in striking such an allegation.

(2) If, however, the jury found that Market Supply was not an independent contractor, Sherm's Market would nevertheless be vicariously liable to business visitors for injuries caused by unsafe conditions created by employees or agents of Market Supply. Again, the basis of that liability would not rest upon a duty of Sherm's Market to supervise Market Supply as its employer, but upon the primary duty of Sherm's Market as the owner and operator of the store to keep the premises reasonably safe for business visitors. Thus, because its liability would still not depend upon whether or not it supervised the work of Market Supply, such a specification would still be surplusage subject to motion to strike.

It follows for both of these reasons that the trial court did not err in withdrawing from the jury the allegation that Sherm's Market "failed to exercise proper or any control or supervision over the agents and employees of Market Supply." It does not follow,

however, that the verdict in favor of defendant Sherm's Market can be affirmed in view of error in instructions relating to the basis for liability of that defendant, as next discussed.

3. *Further requested instructions.*

Plaintiff also assigns as error the failure of the trial court to give instructions requested by her relating to the responsibility of Market for the work performed by Market Supply, as contractor. The first of these requested instructions was as follows:

> "While alterations or repairs are in process in a store with invitees being in and about the property, the possessor of the store may not remain passive when dangerous prosecution of the work by the subcontractors has been brought to his attention. He owed the duty to exercise reasonable care for their safety and not to expose them to any unreasonable risk; and this includes the duty to exercise a reasonably careful supervision over the appliances or methods of an independent contractor whom the possessor has permitted to carry on the alterations and repairs. The possessor is, therefore, liable for the negligence of the independent contractor."

The second requested instruction on that subject was that:

> "A possessor's duty to his business invitee as I have defined that duty for you is a nondelegable duty. In other words, the possessor of store premises may not delegate his responsibilities and duties to his customers to third parties."

The trial court gave the first part of the first instruction but failed to give the second instruction. Plaintiff says that:

> "In the absence of such an instruction, the jury might well have concluded that since all the overt

acts which created the hazard on the store premises were those of the contractors, the Store really had no responsibility and that the Store transferred or delegated such responsibility to the third party contractors. In this case with multiple defendants, the requested instruction was needed to pinpoint and clarify that the Store did not absolve itself of responsibility when it hired the contractors to do the work."

We recognize that the primary basis upon which this case was submitted to the jury was on a theory of the direct responsibility of Sherm's Market, as owner and operator of the store, to keep the premises reasonably safe for business visitors and that this included a duty to exercise reasonable supervision over the work of contractors engaged by it, rather than on a theory of the vicarious liability of Sherm's Market.

■ The first of the foregoing instructions was properly rejected not only because the last sentence was stated in terms of "liability," but also because of its reference to a duty of supervision, for reasons previously stated.

■ The second requested instruction, however, was based upon a theory of vicarious liability and was a proper instruction in order to inform the jury of the nature of the vicarious duty owed by Sherm's Market, as previously discussed. The trial court did instruct the jury to the effect that whenever defective conditions are due to the act of the possessor "or of persons who are acting on its behalf, notice or knowledge need not then be proved, but is necessarily implied." In our view, however, the concept of vicarious liability and its understanding by the jury involves more than the element of implied knowledge of defects due to the act

of an independent contractor or other person acting on behalf of the possessor of the premises. The primary element is the rule that a storekeeper cannot delegate to any third party his duty to his customers to keep the premises reasonably safe.

■ Accordingly, we hold that it was error to refuse to give that requested instruction. On retrial, however, in view of our decision today in *Lipman Wolfe v. Teeples & Thatcher, supra,* an instruction consistent with that decision would be more appropriate.

Plaintiff's remaining assignment of error is that the court erred in failing to give the following instruction:

"A possessor of land is liable to his business invitee[s] for physical harm caused to them by any activity or condition on the premises if the possessor should have anticipated the harm and it was feasible for him to remove or ameliorate the unreasonable danger, even though the danger or condition is known to or is obvious to the business invitee."

Instead, the trial court instructed that:

" 'I instruct you that a possessor of land is not liable to his invitees for physical harm caused to them by any condition on the premises whose danger is known or obvious to them unless the condition is unreasonably dangerous and unless the possessor should anticipate the harm despite such knowledge or obviousness.' "

Plaintiff says that the requested instruction was based upon the rule as set forth in Restatement of Torts 2d § 343A (1965), and adopted by this court in *Dawson v. Payless for Drugs,* 248 Or 334, 339-41, 433 P2d 1019 (1967).

Defendant Market contends that the rule of *Dawson* applies "only when the condition is *unreasonably* dangerous" and that plaintiff's requested instruction did not sufficiently emphasize this requirement, as did the instruction given by the court.

Because this case must be remanded for a new trial we need not decide whether it was error for the trial court to refuse to give this requested instruction. We believe, however, that upon the retrial of this case the instruction given by the court on this subject would be improved by the giving of such an instruction in neutral terms as an affirmative statement of plaintiff's theory of the case relating to the nature and scope of the duty of the owner and operator of a store under the facts of this case. Any question as to the propriety of such an instruction could be easily removed by following it with an instruction to the effect that such a duty arises in the event that the jury finds that the condition of the trench at the time of the accident was unreasonably dangerous; that a condition is unreasonably dangerous if it is one which cannot be encountered with reasonable safety even if the danger is known and appreciated, and that the owner of the premises with such a condition cannot escape liability merely by posting warning signs, but must take reasonable and feasible steps to obviate the danger. *Wilk v. Georges,* 267 Or 19, 514 P2d 877 (1973). See also Restatement of Torts 2d § 343A (1965), Illustration 2.

Because of the errors previously mentioned this case must be remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

McALLISTER, J., concurs in this result.