690 P.2d 341

**ADKISON CORPORATION and Ronald Corrado, dba Clearwater Aviation, Plaintiffs-Appellants,**

v.

**AMERICAN BUILDING COMPANY, Defendant-Respondent.**

No. 14396.

Supreme Court of Idaho.

Oct. 23, 1984.

Marilyn Brennan Schwam, Moscow, Kenneth L. Pedersen, Twin Falls, Dean Wullenwaber, Moscow, for plaintiffs-appellants.

William B. Taylor, Jr., Grangeville, for defendant-respondent.

Marilyn Brennan Schwam, Moscow, for plaintiffs-appellants.

Kenneth L. Pedersen, Twin Falls, and Dean Wullenwaber, Moscow, for amicus, Idaho Trial Lawyers.

William B. Taylor, Jr., Esq., Grangeville, Idaho, attorney for defendant-respondent.

## ON DENIAL OF PETITION FOR REHEARING

DONALDSON, Chief Justice.

This suit was brought by two Idaho plaintiffs, Adkison Corporation, an Idaho contracting company, and Ronald Corrado, an Idaho aircraft mechanic, against American Building Company (ABC), a manufacturer of metal buildings, headquartered in Georgia with a manufacturing plant located in Nevada. The plaintiffs brought suit against ABC for damages resulting from the alleged late delivery of a defective building. Plaintiffs' claim for liability and damages is based on several theories including agency, contract, implied warranty and negligence. The trial court directed a verdict against the plaintiffs on each of the above counts. On appeal, we address whether the plaintiffs presented sufficient evidence to allow a jury to conclude that the defendant was liable on each of the above theories. We affirm in part, reverse in part and remand.

In mid-1978, Corrado wanted to build a hangar, shop, office space and other facilities for his new aircraft repair business at the Grangeville airport. Corrado entered into a written contract with plaintiff Adkison Corporation to have these facilities constructed. ABC was to be the supplier of a metal hangar and lean-to components which were to be erected by Adkison as a part of Adkison's contract with Corrado.

Adkison supplied information regarding the design of the hangar to ABC's dealer, Rural Systems, Inc. (RSI). Adkison ordered the hangar from RSI, who in turn submitted an order to ABC. All the parties understood that the building would be manufactured and supplied by ABC.

RSI made a mistake in placing the order by specifying that the common wall between the hangar building and the first lean-to should be an open wall. Adkison discovered the mistake and notified RSI, and RSI then informed ABC of it. ABC agreed to furnish the additional material to erect the missing wall at no additional cost. There were other fabrication and shipping mistakes, and further delays in shipping additional materials required to complete the building. Such delays and mistakes were directly attributable to ABC.

The plaintiffs are each seeking recovery of economic losses due to ABC's alleged failure to deliver a complete building package, alleged errors in fabrication of its building components, and alleged delays in correcting errors and supplying missing parts.

RSI was originally included as a defendant, but was dismissed from this suit because it declared bankruptcy. The case went to trial and at the conclusion of the plaintiffs' case in chief, the trial court granted ABC's motion for a directed verdict on all of the plaintiffs' counts. The plaintiffs made a motion for a new trial which the trial court subsequently denied. This appeal followed.

On appeal, we must determine whether the trial court erred in granting defendant's motion for a directed verdict on each of plaintiff's theories which are as follows:

(1) The defendant ABC was liable to the plaintiffs based on the theory that an apparent agency existed between ABC and RSI;

(2) The defendant ABC was liable to the plaintiffs based on the theory that plaintiffs were third-party beneficiaries of the ABC–RSI agreement;

(3) The defendant ABC was liable to the plaintiffs for economic losses based on the theory of breach of implied warranties in tort;

(4) The defendant ABC was liable to the plaintiffs for economic losses based on the theory of negligence;

(5) The defendant ABC was liable to the plaintiffs based on a theory of direct contract between the plaintiffs and ABC.

Before we separately address each of the above theories, we first note our standard of review.

"A directed verdict should only be granted when the evidence is so clear and undisputed that all reasonable minds must reach the same conclusion. On a motion for directed verdict pursuant to I.R.C.P. 50(a), the moving party admits the truth of the adverse evidence and every inference that may be legitimately drawn from it. Where there is substantial competent evidence tending to establish plaintiff's case, or where reasonable minds may differ as to the conclusion to be reached from the evidence, the cause should be submitted to a jury."

*Thomas Helicopters, Inc. v. San Tan Ranches*, 102 Idaho 567, 569, 633 P.2d 1145, 1147 (1981) (quoting *Shields & Co., Inc. v. Green*, 100 Idaho 879, 882, 606 P.2d 983, 986 (1980)). Thus, our focus on appeal is to

"determine whether plaintiff's evidence was sufficient to survive defendant's motion for a directed verdict and to justify submitting the case to the jury, *i.e.,* whether, as a matter of law, plaintiff produced sufficient evidence (not a mere scintilla) from which reasonable minds could conclude that a verdict in favor of the plaintiff was proper."

*Gmeiner v. Yacte*, 100 Idaho 1, 4, 592 P.2d 57, 60 (1979).

## I.

### Agency

Plaintiffs contend that ABC is liable to them based on an apparent agency theory. Plaintiffs argue that ABC created the impression that RSI was its agent through ABC's actions and that by virtue of the ABC–RSI agency relationship, a contractual relationship arose between the plaintiffs and ABC.

■ Proof of implied agency is generally found in the acts and conduct of the parties, rather than from an oral or written contract which establishes the agency relationship. *State v. DeBaca,* 82 N.M. 727, 487 P.2d 155 (1971). *See also Briggs v. Morgan,* 262 Or. 17, 496 P.2d 17 (1972) (agency may be proven by circumstances and course of dealing between the parties); *Land-Air, Inc. v. Parker,* 103 Ariz. 1, 435 P.2d 838 (1967) (agency may be established from the relationship of the parties to each other and to the subject matter). In addition, the existence of an agency relationship is a question for the trier of fact to resolve from the evidence. *Clark v. Gneiting,* 95 Idaho 10, 501 P.2d 278 (1972); *Thornton v. Budge,* 74 Idaho 103, 257 P.2d 238 (1953) (if the existence or nonexistence of agency is a disputed question of fact it was for the jury to decide).

■ We turn now to examine the evidence in the case at bar. In its order, the trial court noted that

"[p]laintiffs' evidence tended to show: (1) RSI was an authorized dealer for ABC buildings[.]
(2) RSI participated with ABC in advertising ABC buildings[.]
(3) RSI was supplied with ABC brochures and order forms and instructions.
(4) RSI employees were given some training at an ABC plant, including training on how to order ABC buildings.
(5) ABC representatives in Spokane frequently were in contact with the RSI office there.
(6) RSI did place the order for the Corrado hanger [sic] building with ABC. RSI negligently specified an 'open' wall in its order to ABC.
(7) RSI employees made certain oral representatives [sic] to Adkison about delivery dates of the ABC building.
(8) RSI made numerous calls to ABC to inquire about the Adkison order, to relay complaints from Adkison, and to order additional materials."

Notwithstanding this evidence, the trial court concluded "all of plaintiffs' evidence

... did not establish the principal-agency relationship between ABC and RSI." We have read the transcript and studied the record in this case, and we believe that the evidence is such that reasonable minds could differ as to the conclusion to be reached from the evidence. Accordingly, we reverse the order of the district court in directing a verdict against the plaintiffs on this count and remand it to the trial court for a new trial on the merits.

II.

### Third-Party Beneficiary

Plaintiffs contend they were third-party beneficiaries of the contract between ABC and RSI for the sale of the hangar building to RSI. Accordingly, plaintiffs claim they are entitled to enforce the ABC–RSI contract and to have the benefit of any warranties which ran with the ABC–RSI contract of sale.

■ This Court has previously recognized the right of a third party to maintain an action on a contract executed for the benefit of such third party. *Davis v. Nelson-Deppe, Inc.,* 91 Idaho 463, 424 P.2d 733 (1967); *Dawson v. Eldredge,* 84 Idaho 331, 372 P.2d 414 (1962); I.C. § 29–102. However, "before recovery can be had by a third party beneficiary, it must be shown that the contract was made for his direct benefit, or as sometimes stated primarily for his benefit, and that it is not sufficient that he be a mere incidental beneficiary." *Dawson, supra,* at 337, 372 P.2d at 418, (quoting *Sachs v. Ohio Nat. Life Ins. Co.,* 148 F.2d 128, 131 (7th Cir.1945)).

In the more recent case of *Stewart v. Arrington Construction Co.,* 92 Idaho 526, 446 P.2d 895 (1968), we further stated that the contract itself must express an intent to benefit the third party. "This intent must be gleaned from the contract itself unless that document is ambiguous, whereupon the circumstances surrounding its formation may be considered." *Id.* at 532, 446 P.2d at 901. In *Stewart,* we concluded that the trial court should have considered the provisions of the contract to see if it "manifested an intent to benefit a third

person." *Id.* We further concluded that without an indication that the contract therein was considered, the trial court's summary dismissal of appellant's third-party count was improper. *Id.*

In the case at bar, the record does not reveal that the trial court ever considered the ABC–RSI contract in reaching its decision to direct a verdict against the plaintiffs on this count. The trial court merely stated "[i]t is my opinion that neither Adkison nor Corrado occupied the position of 'third party beneficiary' of the ABC–RSI sales agreement." Without an indication that the contract in the present case was considered, we believe that the directed verdict in this count was improperly granted.

Moreover, in reviewing the record and transcript in this case, we find the evidence is such that minds may differ as to the conclusion to be reached from the evidence. Thus, the order of the district court directing a verdict against plaintiffs on this count is reversed and remanded to the trial court for a new trial.

### III.

### Implied Warranty

Plaintiffs further contend that ABC should be liable for economic losses based on a theory of breach of implied warranties in tort. Plaintiffs urge this Court to recognize such a cause of action without the requirement of privity. We need not reach the privity issue because it is the view of this Court that the law of contracts should control actions for purely economic losses and not the law of torts.[1] *See* Keeton, *Annual Survey of Texas Law-Torts*, 25 S.W.L.J. 1 (1971); Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?*, 114 U.Pa.L.Rev. 539 (1966); Com-

ment, *The Vexing Problem of the Purely Economic Loss in Products Liability: An Injury in Search of a Remedy*, 4 Seton Hall L.Rev. 145 (1972). As we previously have held, "[t]he economic expectations of parties have not traditionally been protected by the law concerning unintentional torts." *Clark v. International Harvester Co.*, 99 Idaho 326, 335, 581 P.2d 784, 793 (1978).

The legislature has enacted the Uniform Commercial Code which contains a comprehensive and finely tuned statutory mechanism for dealing with economic losses suffered by a party to a sales transaction. The fear that an implied warranty action for economic losses under the UCC would subject manufacturers to liability for damages of unknown and unlimited scope is unfounded. Specifically, provisions are available under the UCC to limit the scope of the manufacturer's potential liability. Under § 28–2–719, a manufacturer may limit the buyers remedies or the damages recoverable. Section 28–2–316 also allows a manufacturer to exclude or modify the implied warranties of the Code (subject to the requirements of §§ 28–2–316 and 28–2–302).

> "We do not believe that any good purpose would be achieved by undermining the operation of the UCC provisions by extending tort law to embrace purely economic losses in product liability cases. Moreover, the UCC provisions provide the Court with ample room for the exercise of wide judicial discretion to ensure that substantial justice results in particular cases. *See, e.g.,* I.C. §§ 28–2–302 and –2–719(3) (concerning unconscionable clauses and contracts), and I.C. § 28–1–203 (imposing a general obligation of good faith)."

*Clark, supra,* at 335, 581 P.2d at 793.

In sum, breach of implied warranty actions for purely economic losses must be

---

**1.** The UCC leaves to the courts the question of whether vertical privity of contract will be required in actions for breach of implied warranties. *See* I.C. § 28–2–318 comment 3. This Court has held that "privity of contract is required in *a contract action* to recover economic loss for breach of implied warranty." *Salmon*

*Rivers Sportsman Camps, Inc. v. Cessna Air Co.,* 97 Idaho 348, 354, 544 P.2d 306, 312 (1975) (emphasis added). The posture and facts of this case do not provide an appropriate basis within which to review our decision in *Salmon Rivers,* and thus we leave that matter to another day.

viewed in a contract setting with relevant contract principles. Accordingly, we affirm the order of the district court directing a verdict on this count.

## IV.

### Negligence

Plaintiffs contend that ABC should be held liable for plaintiffs' economic losses based on ABC's negligence. We have previously denied recovery in negligence for purely economic losses from the manufacturer of a defective product. *Clark v. International Harvester Co., supra.* The district court correctly ruled that a negligence claim for economic damages was not proper and, accordingly, we affirm the order of the district court in directing a verdict on this count.

## V.

### Direct Contract

Lastly, plaintiffs contend that ABC undertook to correct the defects in the plaintiffs' hangar thereby creating a direct contract between ABC and the plaintiffs, at least for the correction of the defects. Notwithstanding that the plaintiffs plead a separate cause of action in "contract" and "promissory estoppel" in their second amended complaint, the trial court failed to address the matter of the direct contract claim. The district court merely stated "[i]t is also my opinion that plaintiffs did not prove facts which established their right to recover from ABC under either of the theories of Ratification or Estoppel." Because our review of the record and transcript does not reveal the manner in which the trial court disposed of the direct contract issue, we are unable to review it on appeal. However, in view of our decision to remand this case on other issues, we believe it best to remand this issue for a new trial on the merits as well.

Affirmed in part, reversed in part, and remanded.

Costs to appellant.

No attorney fees on appeal.

BAKES and HUNTLEY, JJ., and McFADDEN and TOWLES, JJ., Pro Tem, concur.