796 P.2d 506

Patricia SHARP, Plaintiff–Appellant,

v.

W.H. MOORE, INC., an Idaho corpora-
tion; Anthony "Mike" Barbero, d/b/a
Security Investments; and Robert
Goold, d/b/a Security Police, Defen-
dants–Respondents.

No. 16667.

Supreme Court of Idaho.

July 31, 1990.

Wilson & Carnahan, Boise, for plaintiff-appellant. Robert R. Chastain, argued.

Quane, Smith, Howard & Hull, Boise, for defendants-respondents W.H. Moore, Inc. and Anthony Barbero. Robert C. Moody, argued.

Moffatt, Thomas, Barrett, Rock & Field, Boise, for defendant-respondent Robert Goold. Mark S. Prusynski, argued.

BISTLINE, Justice.

## ON REHEARING

A rehearing was granted; counsel reargued; the Court has reconsidered, and has determined to substitute this opinion for the Court in place of 1989 Opinion No. 134, which is in significant respects different, and is now withdrawn.

On May 12, 1985, Patricia Sharp was an employee of the Jess Swan Insurance Agency, whose offices were located in a building leased by Swan Insurance from W.H. Moore, Inc. W.H. Moore had contracted with Security Investment to act as property manager for the building. Security Investment, in turn, contracted with Security Police to provide the protective patrols for the building.

On the Sunday morning in question, Sharp was working alone in her office at 1199 Shoreline Drive, Boise, Idaho. While there, she was assaulted and raped by an unknown assailant who may have gained access to the building through an unlocked third floor fire escape door.

Sharp filed her complaint and demand for a jury trial on January 24, 1986. W.H. Moore, Inc. and Security Investments filed a motion for summary judgment on May 28, 1986. Security Police filed its motion for summary judgment on June 26, 1986. The district court granted both motions on the basis that, under the circumstances of this case, the defendants owed no duty of care to Sharp.

The sole issue is whether the district judge erred in this determination. Judge Newhouse discussed the matter in the following terms:

It is a matter of law to determine whether a duty of care is owed in the factual circumstances pled by the plaintiff.... In this case the plaintiff has alleged the *breach of the duty of care* occurred when the defendants Moore and Barbero allowed a third floor fire escape door to have a faulty lock that could be left unlocked. The plaintiff alleges that Robert Goold and his security company *breached a duty of care in not inspecting the lock to make sure the door was locked* on the night of May 11, 1985, and the morning of May 12, 1985. It is speculated by the plaintiff and the police that the intruder gained entry into the building by going in through the third floor fire escape door. The rape and assault in this cause of action occurred in the secured area of the plaintiff's employers offices on the second floor. The plaintiff has admitted in her deposition that she left unlocked the back door of her employer's second floor offices when she went to the bathroom. Sometime thereafter, the assault and rape occurred inside the offices. To further complicate this issue is the deposition of Lowell E. Michael, taken on May 28, 1986, in which Mr. Michael states he was the security guard on duty that night and had the job of checking the doors to make sure they were secured. Mr. Michael, in his deposition, swore under oath that he checked the third floor fire escape door and it was secured at the time of his check around midnight and 1:00 a.m. *This court is of the belief that even if the third floor door had been negligently left unlocked and had not been inspected by the security guard on the night of May 11, 1985, this court can not as a matter of law determine that the security company breached its duty of care owed to the plaintiff. The plaintiff herself could have prevented the injury if she had not negligently left the door unlocked to her offices on the second floor. This court in reviewing the totality of the circumstances does not believe that the alleged breach of the duty by the defendants is of a high enough degree of foreseeability to warrant a finding of a breach of duty that can be imposed against the defendants.* Therefore this court grants the motion for summary judgment on behalf of all the defendants in this case.

Memorandum Decision and Order, R. Vol. 1 at 29–32 (emphasis added).

■ Review of an order granting summary judgment requires an appellate court to make two determinations: (1) Whether there remains a genuine issue as to any material fact; and (2) Whether the moving party was entitled to judgment as a matter of law. *Mitchell v. Siqueiros*, 99 Idaho 396, 582 P.2d 1074 (1978). In making those determinations, the Court will construe the facts and any reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, in this case, Sharp. *Anderson v. City of Pocatello*, 112 Idaho 176, 731 P.2d 171 (1986); *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 683 P.2d 440 (Ct.App.1984).

■ With this standard of review in mind, a reading of the trial judge's opinion, particularly the portions excerpted above, clearly demonstrates reversible error. The district court barely touched upon the only question of law before it, whether the defendants owed Sharp a duty of care. Instead the district court reached and decided factual issues that are normally reserved for the jury—defendants' *breach* of a duty, if any, and the plaintiff's *comparative negligence*, if any. The court's view that "[t]he plaintiff herself could have prevented the injury if she had not negligently left the door unlocked to her offices on the second floor," appears to have weighed particularly heavily in the court's decision. In addition, the court actually reversed the burden of persuasion, stating that "... this court cannot as a matter of law determine that the security company breached its duty of care owed to the plaintiff." Sharp did not pretend that she was entitled to summary judgment as a matter of law. It was both defendants who made that contention. It was therefore the *defendants'* burden to show that, even construing the facts and inferences most favorably to Sharp, the defendants were entitled to a

judgment as a matter of law. This they did not do. The summary judgment in defendants' favor must therefore be reversed.

However, this reversal does not end our inquiry. "[I]n giving a decision, if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case presented upon such appeal, and necessary to the final determination of the case." Idaho Code § 1–205. This is true even if the reversal is of a summary judgment rather than a judgment rendered after a trial. *Layrite Prods. Co. v. Lux,* 86 Idaho 477, 388 P.2d 105 (1964). It therefore remains for us to determine whether, as a matter of law, any of the defendants owed Sharp a duty of care under the circumstances of this case.

## I. THE LANDLORD

■ The question of whether a landlord owes a duty of reasonable care to the tenants of the property was settled by our recent decision in *Stephens v. Stearns,* 106 Idaho 249, 678 P.2d 41 (1984). There, Justice Donaldson, with three judges agreeing, wrote:

> [W]e today decide to leave the common-law rule and its exceptions behind, and we adopt the rule that a landlord is under a duty to exercise reasonable care in light of all the circumstances.
>
> We stress that adoption of this rule is not tantamount to making the landlord an insurer for all injury occurring on the premises, but merely constitutes our removal of the landlord's common-law cloak of immunity.... *We hold that defendant Stearns did owe a duty to plaintiff Stephens to exercise reasonable care in light of all the circumstances, and that it is for a jury to decide whether that duty was breached.*

106 Idaho at 258, 678 P.2d at 50 (emphasis added).

■ In addition to the clear rule of *Stephens,* other legal principles favor the recognition of a requirement of due care in the circumstances present here. One is the familiar proposition that one who voluntarily assumes a duty also assumes the obligation of due care in performance of that duty. A landlord, having voluntarily provided a security system, is potentially subject to liability if the security system fails as a result of the landlord's negligence. *Jardel Co. v. Hughes,* 523 A.2d 518 (Del. 1987) (having provided security, owner must anticipate conduct of third persons); *Feld v. Merriam,* 506 Pa. 383, 485 A.2d 742 (1984); *accord Rowe v. State Bank of Lombard,* 125 Ill.2d 203, 126 Ill.Dec. 519, 531 N.E.2d 1358 (1988); *Lay v. Dworman,* 732 P.2d 455 (Okla.1987) (landlord's control over security creates potential liability where tenants rely on security). While the landlord/tenant relationship does not in and of itself establish a duty to keep doors locked, once Moore and Security Investments had initiated a locked door policy and had employed a security service with the intent of keeping the doors locked, they undertook such a duty and are subject to liability if they failed to perform that duty with a reasonable standard of care.

■ Another reason for finding a duty of care to exist in this case is the general rule that each person has a duty of care to prevent unreasonable, foreseeable risks of harm to others. *Alegria v. Payonk,* 101 Idaho 617, 619 P.2d 135 (1980); *Harper v. Hoffmann,* 95 Idaho 933, 523 P.2d 536 (1974).

> Every person has a general duty to use due or ordinary care not to injure others, to avoid injury to others by any agency set in operation by him, and to do his work, render services or use his property as to avoid such injury. [Citations omitted.] The degree of care to be exercised must be commensurate with the danger or hazard connected with the activity. [Citations omitted.]

*Whitt v. Jarnagin,* 91 Idaho 181, 188, 418 P.2d 278, 285 (1966). Whether the duty attaches is largely a question for the trier of fact as to the foreseeability of the risk.

■ Foreseeability is a flexible concept which varies with the circumstances of each case. Where the degree of result or harm is great, but preventing it is not difficult, a relatively low degree of foresee-

ability is required. Conversely, where the threatened injury is minor but the burden of preventing such injury is high, a higher degree of foreseeability may be required. *See U.S. v. Carroll Towing Co.,* 159 F.2d 169, 173 (2d Cir.1947) (Judge Learned Hand); *Isaacs v. Huntington Memorial Hosp.,* 38 Cal.3d 112, 211 Cal.Rptr. 356, 695 P.2d 653, 658 (1985). Thus, foreseeability is not to be measured by just what is more probable than not, but also includes whatever result is likely enough in the setting of modern life that a reasonably prudent person would take such into account in guiding reasonable conduct. *Bigbee v. Pacific Tel. & Tel. Co.,* 34 Cal.3d 49, 192 Cal.Rptr. 857, 665 P.2d 947 (1983); *Mullins v. Pine Manor College,* 389 Mass. 47, 449 N.E.2d 331 (1983).

Defendants argue that they are entitled to summary judgment on the issue of foreseeability because the plaintiff failed to come forward with any evidence that prior similar incidents of criminal activity had occurred in the building or in its vicinity. However, the "prior similar incidents" rule was rejected recently by a leading case upon which the trial court purported to rely to the contrary. In *Isaacs v. Huntington Memorial Hosp.,* 38 Cal.3d 112, 211 Cal. Rptr. 356, 695 P.2d 653 (1985), the California high court rejected a strong line of cases from California's intermediate appellate courts that held to the position espoused here by the defendants. The California court ruled that while prior similar incidents are relevant evidence of foreseeability, they are not the *sine qua non* on the issue of foreseeability. *Id.* at 362, 211 Cal.Rptr. at 659. *See also Sharpe v. Peter Pan Bus Lines,* 401 Mass. 788, 519 N.E.2d 1341 (1988); *Mullins v. Pine Manor College,* 389 Mass. 47, 449 N.E.2d 331 (1983);.

The solid and growing national trend has been toward the rejection of the "prior similar incidents" rule. *See, e.g., Rowe v. State Bank of Lombard,* 125 Ill.2d 203, 126 Ill.Dec. 519, 531 N.E.2d 1358 (1988) (simply because no violent crimes had been committed at the office parking area does not render criminal actions unforeseeable as a matter of law); *Samson v. Saginaw Professional Bldg. Inc.,* 393 Mich. 393, 224

N.W.2d 843 (1975); *Aaron v. Havens,* 758 S.W.2d 446 (Mo.1988) (no need for past similar crimes); *Small v. McKennan Hosp. (Small II),* 437 N.W.2d 194 (S.D.1989) (failure to prove any criminal activity in the area is not fatal to the submission of the foreseeability issue to the jury because criminal assaults occur in all neighborhoods); *Paterson v. Deeb,* 472 So.2d 1210, 1218–19 (Fla.App.1985) ("[w]e are not willing to give the landlord one free ride, as it were, and sacrifice the first victim's right to safety upon the altar of foreseeability by slavishly adhering to the now-discredited notion that at least one criminal assault must have occurred on the premises before the landlord can be held liable").

 Reduced to its essence, the "prior similar incidents" requirement translates into the familiar but fallacious saying in negligence law that every dog gets one free bite before its owner can be held to be negligent for failing to control the dog. That license which is refused to a dog's owner should be withheld from a building's owner and the owner's agents as well. There is no "one free rape" rule in Idaho.

The "prior similar incidents" requirement is not only too demanding, it violates the cardinal negligence law principle that only the general risk of harm need be foreseen, not the specific mechanism of injury. *Taco Bell v. Lannon,* 744 P.2d 43 (Colo.1987); *Galloway v. Bankers Trust Co.,* 420 N.W.2d 437 (Iowa 1988); *Duncavage v. Allen,* 147 Ill.App.3d 88, 100 Ill.Dec. 455, 497 N.E.2d 433 (1986); Prosser & Keeton, The Law of Torts § 43 at 299 (5th ed. 1984). *See also Knodle v. Waikiki Gateway Hotel, Inc.,* 69 Haw. 376, 742 P.2d 377 (1987); *Small v. McKennan Hosp. (Small I),* 403 N.W.2d 410 (S.D.1987). Such a requirement would remove far too many issues from the jury's consideration. Foreseeability is ordinarily a question of fact. *Isaacs v. Huntington Memorial Hosp.,* 38 Cal.3d 112, 126, 211 Cal.Rptr. 356, 362, 695 P.2d 653, 659 (1985).

 Defendants argue that security was provided to protect only the building and its contents, not the persons within.

Otherwise put, property is entitled to protection, but not so with persons. In reality the question is whether it is foreseeable that an intruder might commit a violent act after gaining entry to the building where security was employed to protect against "prowlers, vandals or unauthorized intruders." Service Agreement between Security Police and Security Investments, R. Vol. 1 at 26. The risk to be prevented was that of criminal activity. Unfortunately criminals do not tidily confine their crimes to property only. Even a shoplifting may turn violent. *Jardel Co. v. Hughes,* 523 A.2d 518, 525 (Del.1987); *Galloway v. Bankers Trust Co.,* 420 N.W.2d 437, 439 (Iowa 1988). *Accord Aaron v. Havens,* 758 S.W.2d 446, 448 (Mo.1988) ("[i]f a burglar may enter so may a rapist"); *Small v. McKennan Hospital (Small II),* 437 N.W.2d 194 (S.D.1989). The question is one of foreseeability. It is therefore an issue for the jury or other trier of fact to decide. *K.S.R. v. Novak & Sons, Inc.,* 225 Neb. 498, 406 N.W.2d 636 (1987); *Isaacs,* 211 Cal.Rptr. at 362, 695 P.2d at 659.

■ Defendants also argue that the occurrence of criminal activity is an intervening, superseding force that breaks the chain of causation potentially binding defendants to liability. While this is a superficially pleasing statement of a general rule, it has no applicability under the circumstances of this case. Here the precise hazard to be guarded against was criminal activity.

> If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.
>
> b. The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability cannot relieve him from liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because

the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity.

Restatement (Second) of Torts § 449 and comment b (1965). *Accord Holley v. Mt. Zion Terrace Apartments, Inc.,* 382 So.2d 98, 101 (Fla.App.1980) (rejecting the "superseding" argument as entirely fallacious). *See also Massie v. Godfather's Pizza, Inc.,* 844 F.2d 1414 (10th Cir.1988); *Meyers v. Ramada Hotel Operating Co.,* 833 F.2d 1521 (11th Cir.1987); *Duncavage v. Allen,* 147 Ill.App.3d 88, 100 Ill.Dec. 455, 459–60, 497 N.E.2d 433, 437–38 (1986).

Thus, in addition to the rule of *Stephens v. Stearns,* 106 Idaho at 249, 678 P.2d at 41, imposing a duty of reasonable care, under the circumstances, running from landlords or owners to their tenants as a matter of law, there are ample additional reasons for imposing such a duty on the landlord in this case. It remains for a jury to determine whether there was any breach of that duty. Therefore the summary judgment as to Moore is reversed and remanded.

## II. THE LANDLORD'S AGENTS

Remaining for our consideration are the summary judgment rulings in favor of defendants Security Investments and Security Police. Two contracts in the record demonstrate the establishment of a principal/agency relationship between Moore and Security Investments and a subagency relationship between Security Investments and Security Police.

■ Security Investments was hired by Moore to manage the building housing Sharp's employer. The contract between them provided in relevant part:

> Contractor [Security Investments] shall [make] appropriate arrangements for and [supervise] the delivery of utility, *security,* . . . and other services incidental to the operation of the Project, all in a manner consistent with the efficient operation of a first class office development *and in accordance with such spe-*

*cific guidelines as may from time to time be given by Owner.*

R. Vol. 2, at 12 (emphasis added). It is axiomatic that an agency relationship is created where one who hires another has retained a contractual right to control the other's manner of performance. *Bryant v. Sherm's Thunderbird Market*, 268 Or. 591, 522 P.2d 1383 (1974); *Smith v. Henger*, 148 Tex. 456, 226 S.W.2d 425 (1950).

■ The contract between the building manager and Security Police provided the following explicit agency-creating language:

Security Police is hereby given authority and made agent to act in behalf of and to do all acts that Subscriber could do to protect the above premises from PROWLERS, VANDALS, OR UNAUTHORIZED INTRUDERS.

R. Vol. 1 at 26.

■ As a result of the agency relationships established, if Security Police was negligent for not checking the door through which the rapist may have gained entry, Security Police itself is susceptible to liability, which in turn may be imputed to Security Investments and to Moore. An agent is liable for its own negligence. *McAlvain v. General Ins. Corp. of America*, 97 Idaho 777, 781, 554 P.2d 955, 959 (1976); Restatement (Second) of Agency § 343 (1958). A principal is liable for the torts of an agent committed within the scope of the agency relationship. *Bailey v. Ness*, 109 Idaho 495, 497, 708 P.2d 900, 902 (1985); Restatement (Second) of Agency § 251 (1958). Both principals and agents are liable for the torts of a subagent committed within the agency relationship. Restatement (Second) of Agency §§ 255, 362 (1958). Thus the negligence, if any, of the sub-agent, Security Police, renders it potentially liable to Sharp, and its liability may be imputed to the agent, Security Investments, and to the principal, Moore.

All three summary judgments are reversed and the cause is remanded for further proceedings. Costs to appellant; no attorney fees on appeal.

JOHNSON and BOYLE, JJ., and WALTERS, J. Pro Tem., concur.

BAKES, Chief Justice, concurring in part and dissenting in part:

I concur in the reversal of summary judgment for W.H. Moore, Inc. However, I dissent from the reversal of summary judgment for the defendants Security Investments and Security Police. Under I.R.C.P. 56(c) summary judgment should be affirmed when "the pleadings, depositions and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The plaintiff has not shown any breach of duty owed to the plaintiff by either Security Investments or Security Police and, accordingly, the summary judgment in favor of these two defendants should be affirmed.

Since the analysis of the right to summary judgment differs among the various defendants, a separate analysis of the claims against each of the defendants is necessary.

### I. CLAIM AGAINST W.H. MOORE, INC.

As owner and landlord of Forest River Plaza # 1 building (the plaza), W.H. Moore, Inc. (Moore), owed certain duties to its tenants including the Jess Swan Insurance Agency (Swan) and to its tenants' employees, including plaintiff Sharp. Owner/landlord Moore owed a duty to tenant Swan "to exercise reasonable care in light of all the circumstances." *Stephens v. Stearns*, 106 Idaho 249, 258, 678 P.2d 41, 50 (1984). Under our decision in *Keller v. Holiday Inns, Inc.*, 107 Idaho 593, 595, 691 P.2d 1208, 1210 (1984), an owner/landlord must also "exercise reasonable care in light of all the circumstances" to a *tenants' employees* (1) "for protection [from a dangerous condition] even though the dangerous condition is known and obvious to the employee," and under *Marcher v. Butler*, 113 Idaho 867, 871, 749 P.2d 486, 490 (1988), (2) "to provide safe conditions for employment upon the premises."

Reviewing the entire record most favorably to the party opposing the summary judgment motion, the record reflects that there was a genuine issue of material fact regarding (1) whether the defendant Moore breached a duty to Sharp; (2) whether that breach was the actual cause of Sharp's injury; and (3) was that breach the proximate cause of Sharp's injury. Accordingly, I agree that the summary judgment for Moore should be reversed.

## II. CLAIMS AGAINST SECURITY INVESTMENTS AND SECURITY POLICE

Sharp also alleges that the defendants Security Investments and Security Police breached duties owed to her. Depending on the relationship of the parties, there can be duties owed in tort and/or in contract. *See Just's v. Arrington Construction Co., Inc.,* 99 Idaho 462, 468, 583 P.2d 997, 1003 (1978) ("[N]egligent conduct and breach of contract are two distinct theories of recovery."). Unfortunately, the Court's opinion today fails to distinguish between those "two distinct theories of recovery." The Court's opinion recognizes the contractual relationship between Moore and Security Investments (the property manager) and between Security Investments and Security Police (who provided the periodic daily inspections). However, the Court makes no analysis of how Security Investments and Security Police breached any tort duties owed to Sharp or, for that matter, contractual duties to the plaintiff Sharp. While indeed Security Investments may have breached its contractual duties to Moore, and Security Police may have breached its contractual duties to Security Investments, neither Security Investments nor Security Police breached either a contractual or a tort duty to the plaintiff Sharp, and accordingly summary judgment was appropriate in favor of those two defendants.

### A. Tort Duties

"A tort requires the wrongful invasion of an interest protected by the law...." *Just's v. Arrington Construction Co., Inc.,* 99 Idaho 462, 468, 583 P.2d 997, 1003 (1978).

The elements of common law negligence have been summarized as (1) a duty, recognized by law, requiring a defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the resulting injuries; and (4) actual loss or damage. *Alegria v. Payonk,* 101 Idaho 617, 619 P.2d 135 (1980).

The law recognizes that owner/landlords owe duties to their tenants and their tenants' employees to exercise reasonable care (1) "in light of all the circumstances," *Stephens v. Stearns,* 106 Idaho 249, 258, 678 P.2d 41, 50 (1984), (2) "for protection [from a dangerous condition] even though the dangerous condition is known and obvious to the employee," *Keller v. Holiday Inns, Inc.,* 107 Idaho 593, 595, 691 P.2d 1208, 1210 (1984), and (3) "to provide safe conditions for employment upon the premises." *Marcher v. Butler,* 113 Idaho 867, 871, 749 P.2d 486, 490 (1988). These duties of the owner/landlord are based on the landlord/tenant relationship with the tenant and the tenant's employees. Because an owner/landlord exercises control of his building, he also bears responsibility for foreseeable injuries to the tenants and their employees resulting from his failure to exercise reasonable care. *Id.* However, Security Investments and Security Police were not the owner/landlord, nor did they have any recognized legal relationship with the tenants of the owner/landlord or the tenants' employees such as plaintiff Sharp. They do not become the owner/landlord merely by contracting to perform services, even security services, for the landlord. While their contracts may have imposed some contractual duties upon them, there can be no recovery in tort by Sharp from Security Investments or Security Police because they owed no duty to Sharp. Strangely, the majority opinion does not make a tort analysis with regard to Security Investments and Security Police. The majority opinion does not point out any duty owed by Security Investments or Security Police to Sharp the breach of which could result in a negligence claim by Sharp against them. The Court's opinion merely

states that, "If Security Police was negligent for not checking the door through which the rapist may have gained entry, Security Police itself is susceptible to liability, which in turn may be imputed to Security Investments and to Moore. An agent is liable for its own negligence." *Ante* at 303, 796 P.2d at 512. However, the Court does not go on and determine whether or not Security Police breached any duty to Sharp, which could be the basis for its negligence. Rather, the Court concludes that, "Thus the negligence, *if any*, of the sub-agent, Security Police, renders it potentially liable to Sharp, and its liability may be imputed to the agent, Security Investments, and to the principal, Moore." *Ante* at 303, 796 P.2d at 512 (emphasis added). All the Court has said is that *if* there was any negligence on the part of Security Police, it could be imputed to Security Investments and Moore. The Court may be correct in concluding that if there was negligence on the part of Security Police it would be imputed to Security Investments and to Moore. That would depend on whether Security Police was an agent rather than an independent contractor. However, the Court has not made any analysis establishing that there was a triable issue of fact concerning whether Security Police had breached a duty toward Sharp which could result in a claim of negligence by Sharp against Security Police. The Court has merely said that if there was any negligence on the part of Security Police it would be imputed to the others. The Court has not demonstrated how this record establishes any negligence on the part of either Security Investments or Security Police, *i.e.*, breach of a duty owed by either to Sharp. To the contrary, the record demonstrates that no such tort duty was owed, and accordingly the summary judgment granted in favor of those two defendants should be affirmed.

### B. Contract Duties

Because Sharp was not in privity of contract with either Security Investments or Security Police, the only possible contractual duty owed to her by these two defendants would be under a third party benefi-ciary theory. Here, Sharp alleges, and the majority opinion by reversing apparently assumes, that the contracts between (1) Moore and Security Investments, and (2) Security Investments and Security Police were intended to benefit her as an employee of Moore's tenant, Swan. However, a review of our prior cases clearly demonstrates that plaintiff Sharp was not a third party beneficiary of those contracts between (1) Moore and Security Investments, and (2) Security Investments and Security Police.

We have previously set forth requirements for recovery under third party beneficiary theory:

> [B]efore recovery can be had by a third party beneficiary, it must be shown that the contract was made for his direct benefit, or as sometimes stated primarily for his benefit, and that it is not sufficient that he be a mere incidental beneficiary.
>
> . . . .
>
> ... [T]he contract itself must express an intent to benefit the third party. 'This intent must be gleaned from the contract itself unless that document is ambiguous, whereupon the circumstances surrounding its formation may be considered.' [*Stewart v. Arrington Construction Co.*, 92 Idaho 526, 532, 446 P.2d 895, 901 (1968)].

*Adkison Corp. v. American Building Co.*, 107 Idaho 406, 409, 690 P.2d 341, 344 (1984). A third party may only enforce a contract "if he can show he is a member of a limited class for whose benefit it was made." *Stewart v. Arrington Construction Co.*, 92 Idaho at 532, 446 P.2d at 901; *Just's, Inc. v. Arrington Construction Co.*, 99 Idaho 462, 464, 583 P.2d 997, 999 (1978).

Here, in order for Sharp to recover from Security Investments under a third party beneficiary theory, the contract between Security Investments and Moore must express an intent to benefit her as a third party. However, the contract does not express such an intent. In its "Management Agreement" with Moore, Security Investments agreed to manage the *plaza* and to "provide for the smooth and efficient physical operation of the [*plaza*] by making

appropriate arrangements for and supervising the delivery of utilities, security, emergency response, inspection and other services incidental to the operation of the [plaza]...." In the contract, Security Investments undertook no duty with reference to the safety of the tenants' employees. It only agreed "to promote a harmonious relationship with Tenants on behalf of Owner, and in furtherance thereof shall visit all tenants at their premises on a regular basis to express the owner's appreciation of their tenancy and to solicit their suggestions and comments and shall provide prompt and courteous response to tenant inquiries and problems." Such a provision is insufficient to demonstrate that the parties intended that employees of a tenant would be able to exercise rights under the contract. At most the tenants' employees were only *incidental* beneficiaries of Security Investments' contractual duty to manage the *plaza*. Under our prior cases such an incidental beneficiary may *not* maintain a third party beneficiary action. *Just's, Inc. v. Arrington Construction Co.*, 99 Idaho 462, 583 P.2d 997 (1978); *Stewart v. Arrington Construction Co.*, 92 Idaho 526, 446 P.2d 895 (1968).

It follows that if Security Investments' contract with W.H. Moore did not undertake an express contractual duty to intentionally benefit Sharp, then it could not further pass on such a duty in its contract with Security Police. Even if it could, Security Investments in fact did not contract expressly with Security Police to provide safe conditions for employees working in the plaza. Rather, in its "Service Agreement" with Security Investments, Security Police merely agreed to (1) "furnish night patrol services to [the plaza] intermittently during the hours of 8:00 o'clock PM and 7:00 o'clock AM seven nights per week ... doors to be locked at 7–8:00 o'clock PM and unlocked at 7:00 o'clock AM on weekdays only"; (2) "check the above named premises for Forcible Entry, Unauthorized Persons, Unlocked Doors, Broken Windows, Fire ..."; (3) "[c]heck three front doors and fire escape on third floor, East end at opening, regular rounds and closing"; and (4) "protect the above premises from Prowlers, Vandals or Unauthorized Intruders." The contract makes no mention of providing personal security for either tenants or tenants' employees. Again, while tenants' employees may have derived some *incidental* benefits from the Security Investments–Security Police contract, the contract itself was not expressly intended to benefit them, and there is no indication that the contracting parties intended that third parties, such as Sharp, would be entitled to exercise rights under the contract as third party beneficiaries. The only arguable third party beneficiary from the Security Investments–Security Police contract was Moore, the plaza's owner.

Even if the contracts of the defendants Security Investments and Security Police had been worded so as to express an intention that tenants or their employees were to be third party beneficiaries who could exercise rights under those contracts, violation of such a third party beneficiary provision would not have been a tort, but would merely have provided Sharp with contract damages. *Taylor v. Herbold*, 94 Idaho 133, 138, 483 P.2d 664, 669 (1971) ("Ordinarily, a breach of contract is not a tort."). Sharp's claim against Security Investments and Security Police alleged a tort, not a breach of contract. Therefore, even if those two contracts had clearly provided that the tenants and their employees were intended to be direct third party beneficiaries, not merely incidental beneficiaries, *Stewart v. Arrington Construction Co.*, 92 Idaho 526, 446 P.2d 895 (1968), the mere breach of the contract would not constitute a tort. "To found an action in tort, there must be a breach of duty apart from the non-performance of a contract." *Taylor v. Herbold*, 94 Idaho at 138, 483 P.2d at 669.

Accordingly, because Security Investments and Security Police did not owe any contractual duty to Sharp, the summary judgment entered in favor of Security Investments and Security Police should be affirmed.