944 P.2d 1360

Russell ORTHMAN and Nancy Orthman, husband and wife, and Nancy Orthman, natural mother and guardian on behalf of all minor children of the parties, Plaintiffs–Appellants,

v.

IDAHO POWER COMPANY, an Idaho corporation, Defendant–Respondent.

No. 22958.

Supreme Court of Idaho, Boise, April 1997 Term.

July 2, 1997.

Rehearing Denied Oct. 14, 1997.

E. Lee Schlender, Hailey, for plaintiffs–appellants.

Evans, Keane, Boise, for defendant–respondent. Rex Blackburn argued.

JOHNSON, Justice.

This is a personal injury case in which the trial court granted summary judgment dismissing the claims. We conclude that because the party seeking summary judgment did not present evidence establishing the absence of a genuine issue of material fact concerning foreseeability, the trial court should not have granted summary judgment.

## I.

## THE BACKGROUND AND PRIOR PROCEEDINGS

This is the second appeal in this case. In the first appeal, we ruled that the trial court incorrectly dismissed the complaint of Russell Orthman (Russell) and his wife, Nancy Orthman (Nancy), pursuant to I.R.C.P. 12(b)(6), for failure to state a claim upon which relief could be granted. *Orthman v. Idaho Power Co.*, 126 Idaho 960, 895 P.2d 561 (1995) (*Orthman I*).

Following remand, Idaho Power Co. (Idaho Power) moved for summary judgment, supporting its motion with an affidavit of one of its attorneys. Attached to the affidavit as exhibits are the depositions of Russell and Nancy, photographs taken at the Orthmans' residence on the day of Russell's accident, and meteorological records for the area where the Orthmans lived covering the day of the accident, the day before, and the day after. The following is a summary of the evidence contained in these exhibits taken from Idaho Power's brief presented to this Court:

On the morning of Thursday, April 22, 1993, Mr. Orthman left the Orthman residence for work at 7:00 a.m. In mid-morning, Harold Armstrong, an Idaho Power employee arrived at the Orthmans' residence to turn off their power for nonpayment. Both Mr. and Mrs. Orthman recognized that their account with Idaho Power was past due by $360.00.

Mr. Armstrong explained the disconnection procedure to Mrs. Orthman and she asked him not to disconnect their service. In response, Mr. Armstrong telephoned Idaho Power and gave Mrs. Orthman "an opportunity to try and call the power com-

pany and to try and straighten things out." Mr. Armstrong left the Orthman property without disconnecting their power.

Mrs. Orthman talked with an Idaho Power employee, later identified as Jo Ann Hartruft, "three or four times" and asked the company to not disconnect the service. Ms. Hartruft told Mrs. Orthman that there was temporarily no one in the office who could authorize a partial payment. Mrs. Orthman understood, however, that if she paid the bill in full, there would be no disconnection.

After Mr. Armstrong left the Orthman residence, Mr. Orthman briefly returned from work to retrieve some work materials. The Orthmans discussed the situation and Mr. Orthman went back to work. Mr. Armstrong returned sometime before 12:00 noon and, because he was not instructed to do otherwise, disconnected the power.

Mr. Orthman returned after the power had been turned off. He immediately called Idaho Power and explained that he could pay the entire bill the next day, on Friday, April 23, 1993. The Idaho Power employee, again Ms. Hartruft, told Mr. Orthman that the power could be turned back on immediately if such payment was made.

After this conversation, Mr. Orthman attempted to contact his employer, Mike Telford, regarding $600.00 that Mr. Telford owed him. Mr. Orthman attempted approximately three or four times within a ten minute period to contact Mr. Telford. When Mr. Telford did not answer the telephone, Mr. Orthman went outside to his truck and unsuccessfully attempted to reach Mr. Telford through his two-way radio.

Mr. Orthman returned to feed Mr. Telford's cattle and to see about the money Mr. Telford owed him:

> **Mrs. Orthman:** I think he was either on his way to try to find Mike [Telford] at his house or he was on his way to take care of the rest of his job for the day, which was to feed the cattle at Richfield. He actually got into the pickup and drove off and left.

**Q:** How long was he gone?

**A:** Not very long. He had a flat tire about a quarter—well, he was passed (sic) the mailbox half a mile from our house. *He walked back and that was when he rigged up the pole.* (Emphasis added).

Returning to his yard, Mr. Orthman found a long section of metal irrigation pipe and wrapped it with electrical tape. Mr. Orthman assumes that he put electrical tape on the pole and assumes that he did so with an appreciation that his contemplated actions posed a safety hazard. "I probably put it on there in case there was any reason of being shocked." A hook shaped piece of metal rod was connected to the other end of the pole.

Mrs. Orthman realized what her husband was doing while she was talking to an Idaho Power representative on the telephone.

> That was when I realized that my husband was walking towards the pole and was on hold. . . . And I can't get to the door or the window while I'm on the phone. The cord is not long enough to reach. And I told my daughter, who's four, to tell him to wait.

**Q:** Wait [to do] what?

**A:** Wait on trying to connect the power, because I thought maybe I could get some help out of this person I was on the phone with.

**Q:** Did you assume that's what your husband was doing at that point in time?

**A:** Yes.

Nevertheless, while holding the end of the pipe, Mr. Orthman raised the pipe assembly toward the elevated switch and inserted the metal rod into an eyelet in the switch. Mr. Orthman made physical contact with the electrically energized circuit.

There was no emergency at the time the power was disconnected. It reached 68 degrees in Shoshone, Idaho, a few miles from the Orthman residence, on April 22, 1993. Mrs. Orthman could not recall if she had started a fire or even had firewood. Mrs. Orthman had stored drinking water before disconnection. The Orthmans' fam-

ily and friends lived nearby and could have helped them if an emergency had existed. Mr. Orthman's parents lived nearby in Declo, Idaho. Mrs. Orthman's parents lived nearby in Paul, Idaho. Mr. Orthman's sister and Mrs. Orthman's brother lived nearby. Mike Telford, in fact, was an "immediate neighbor." Finally, the Orthmans' cattle were not harmed for lack of water—Mike Telford watered them. Mr. Orthman identified several potential water sources for his stock other than his domestic stock well.

Following the accident, Nancy Orthman's parents paid the account, restoring the power. In fact, Mrs. Orthman's parents had previously loaned the couple money to, among other things, restore other utility service disconnected for nonpayment.

The trial court granted summary judgment dismissing the claims of Russell and Nancy, who appealed.

## II.

## IDAHO POWER DID NOT PRESENT EVIDENCE ESTABLISHING THE ABSENCE OF ANY GENUINE ISSUE OF MATERIAL FACT CONCERNING FORESEEABILITY.

The Orthmans assert that the trial court should not have granted summary judgment because there were issues of duty and foreseeability. We agree because Idaho Power did not present evidence establishing the absence of any genuine issue of material fact concerning foreseeability.

■ Initially, we restate the standard of review we apply in reviewing the trial court's grant of summary judgment:

When faced with an appeal from a lower court's grant of a summary judgment motion, this Court reviews the lower court's ruling by employing the same standard properly applied by the lower court when originally ruling on the motion. Summary judgment shall be rendered "if the pleadings, depositions, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." This Court liberally construes the record in favor of the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. If reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence, summary judgment must be denied. However, if the evidence reveals no disputed issues of material fact, then summary judgment should be granted.

The burden of establishing the absence of a genuine issue of material fact rests at all times with the party moving for summary judgment. In order to meet its burden, *the moving party must challenge in its motion and establish through evidence the absence of any genuine issue of material fact on an element of the nonmoving party's case. If the moving party fails to challenge an element or fails to present evidence establishing the absence of a genuine issue of material fact on that element, the burden does not shift to the nonmoving party, and the non-moving party is not required to respond with supporting evidence.*

*Smith v. Meridian Joint Sch. Dist. No. 2,* 128 Idaho 714, 718–19, 918 P.2d 583, 587–88 (1996) (emphasis added) (citations omitted).

■ Idaho Power asks us to assume for the purposes of this appeal that it failed to comply with all applicable notification and disconnection procedures. Therefore, the narrow question we must address is whether Idaho Power, as the moving party, presented evidence establishing the absence of any genuine issue of material fact concerning foreseeability.

In *Orthman I,* we said:
Previously, this Court has established the duty of care associated with the transmission of electricity. We have held that the highest degree of care must be exercised by those engaged in generation and transmission of electric energy. *Probart v. Idaho Power Co.,* 74 Idaho 119, 258 P.2d 361 (1953). However, we have also found that this duty is not absolute. We do not require a power company to guard against

all *possibilities,* rather we require the company to reasonably guard against *probabilities.* *Id.* at 128, 258 P.2d at 366.

*Orthman I,* 126 Idaho at 962, 895 P.2d at 563 (emphasis in original).

 In *Sharp v. W.H. Moore, Inc.,* 118 Idaho 297, 796 P.2d 506 (1990), the Court noted "the general rule that each person has a duty of care to prevent unreasonable, foreseeable risks of harm to others." *Id.* at 300, 796 P.2d at 509 (citations omitted). The Court then delineated the role that foreseeability plays in determining whether there is a duty in the particular case:

> Whether the duty attaches is largely a question for the trier of fact as to the foreseeability of the risk.
>
> Foreseeability is a flexible concept which varies with the circumstances of each case. Where the degree of result or harm is great, but preventing it is not difficult, a relatively low degree of foreseeability is required. Conversely, where the threatened injury is minor but the burden of preventing such injury is high, a higher degree of foreseeability may be required. Thus, foreseeability is not to be measured by just what is more probable than not, but also includes whatever result is likely enough in the setting of modern life that a reasonably prudent person would take such into account in guiding reasonable conduct.

*Id.* at 300–01, 796 P.2d at 509–10 (citations omitted).

In *Sharp,* the Court also rejected the " 'prior similar incidents' requirement," stating that "it violates the cardinal negligence law principle that only the general risk of harm need be foreseen, not the specific mechanism of injury." *Id.* at 301, 796 P.2d at 510.

 In the present case, the principles stated in *Probart* and *Sharp* require that Idaho Power present evidence establishing the absence of any genuine issue of material fact concerning the general risk of harm Idaho Power should have foreseen because of the way in which Idaho Power disconnected the Orthman's electrical power source.

There is nothing in the evidence presented by Idaho Power in support of its request for summary judgment showing that Idaho Power could not have foreseen that the disconnected electrical power source created a general risk of harm. Instead, the evidence presented by Idaho Power speaks to whether Idaho Power should have foreseen that Russell might try to reconnect the electrical service. This is not the foreseeability to which *Sharp* refers. *Sharp* specifically rejects "the specific mechanism" of injury approach to foreseeability in favor of "the general risk of harm" approach. In the evidence presented in support of its request for summary judgment, Idaho Power did not offer any evidence concerning the general risk of harm, but only concerning its inability to foresee the specific mechanism of the injury to Russell. Therefore, Idaho Power is not entitled to summary judgment.

### III.

### CONCLUSION

We vacate the summary judgment and remand the case to the trial court for further proceedings.

We award the Orthmans costs on appeal. They did not request attorney fees.

TROUT, C.J., and McDEVITT, J., concur.

SILAK, Justice, dissenting.

I must respectfully dissent. The question is " 'whether [appellant's] injury and the manner of its occurrence [were] so highly unusual that we can say, *as a matter of law* that a reasonable [person], making an inventory of the possibilities of harm which [that person's] conduct might produce, would not have reasonably expected the injury to occur.' " *Alegria v. Payonk,* 101 Idaho 617, 620, 619 P.2d 135, 138 (1980) (quoting *Kirby v. Sonville,* 286 Or. 339, 594 P.2d 818, 821 (1979) (emphasis added)). I would hold that the question must be answered in the affirmative.

We have indeed stated that the resolution of whether an injury was a foreseeable result of a negligent act is generally a question of fact for the jury. *Alegria,* 101 Idaho at 619–

20, 619 P.2d at 137–38; *Mico Mobile Sales and Leasing, Inc. v. Skyline Corp.,* 97 Idaho 408, 412, 546 P.2d 54, 58 (1975). However, in order for foreseeability to be a jury question, one of three possible scenarios must exist. The first scenario is that there is conflicting evidence on material facts. The second possibility is that there are undisputed facts upon which reasonable and fair-minded persons might reach different inferences or conclusions. Or, the third and final scenario is that "different conclusions might reasonably be reached by different minds." *Alegria,* 101 Idaho at 619–20, 619 P.2d at 137–38. When considering each of those three scenarios, it is important to keep in mind that we require a power company to guard against probabilities, not possibilities. *Orthman v. Idaho Power Co.,* 126 Idaho 960, 962, 895 P.2d 561, 563 (1995) (*Orthman I* ).

In this case, the first scenario does not apply, because as the trial court found, the parties do not dispute the essential facts of this case. The question then becomes whether reasonable people could reasonably conclude that Russell's actions were foreseeable, or phrased differently, whether Russell's actions were such that a reasonable person could find that they were a probability against which a power company should guard. We have held that when a mobile home retailer illegally used methanol in a mobile home plumbing system, that illegal act was an extraordinary event not foreseeable to the mobile home manufacturer. Thus, as a matter of law, the retailer's actions were not foreseeable, and we upheld the grant of summary judgment in favor of the manufacturer. *Mico,* 97 Idaho at 414, 546 P.2d at 60.

Although Russell was not charged with a crime, he illegally attempted to reconnect his own power, in violation of Idaho Code section 18–4621. Under *Mico,* that fact alone is sufficient to call into question the foreseeability of Russell's actions. Further, the fact that Russell acknowledged in his deposition that he knew that raising a metal pole around power lines presented a risk of shock calls into question whether a reasonable person could find it foreseeable that someone would take such a risk. Finally, the record

contains facts showing that Russell's wife was communicating with Idaho Power in an effort to have electrical service restored; thus, Idaho Power could have only reasonably believed that the Orthmans were taking legal steps to have power restored.

Given these facts, I would hold as a matter of law that while it was possible that Russell would attempt to reconnect his own power, it was not probable. Phrased differently, and to paraphrase *Alegria,* I would hold that Russell's injury and the manner of its occurrence were so highly unusual that this Court can say, as a matter of law, that a power company, making an inventory of the possibilities of harm which his conduct might produce, would not have reasonably expected Russell's injuries to occur. Therefore, I respectfully dissent.

SCHROEDER, J., concurs.