598

7 P.3d 207

Russell ORTHMAN and Nancy Orthman, husband and wife, and Nancy Orthman, Natural Mother and Guardian on behalf of all minor children of the parties, Plaintiffs–Appellants,

v.

IDAHO POWER COMPANY, an Idaho corporation, Defendant–Respondent.

No. 25221.

Supreme Court of Idaho, Twin Falls, March 2000 Term.

July 19, 2000.

Rehearing Denied Aug. 28, 2000.

E. Lee Schlender, Chtd., Hailey, for appellants.

Evans, Keane, LLP, Boise, for respondent. Rex Blackburn argued.

KIDWELL, Justice.

Russell and Nancy Orthman appealed from the trial court's judgment for the defendant, Idaho Power Company, in a tort action. The Orthmans sued Idaho Power for negligence when Russell was severely injured trying to reconnect electrical power to his house. Idaho Power had disconnected the power because the Orthmans were delinquent in paying their account. Idaho Power asserted an affirmative defense of negligence by Russell. The trial court entered judgment for Idaho Power when a jury found the comparative negligence of Idaho Power to be 50% and of Russell to be 50%. We affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

Farm worker Russell Orthman, his wife Nancy, and their small children lived in a small farmhouse in Lincoln County. Idaho Power Company started residential service at the address under the Orthmans' names in August 1992. From the start, the Orthmans were delinquent in paying their electric bill. Idaho Power started the process of terminating service in late November, but stopped the process because it was close to its December–February moratorium on terminating electrical service. The Orthmans paid $100 on their bill in early December. After this payment, their outstanding balance was over $320. Even though Idaho Power could not terminate service during the winter mor-

atorium, it sent the Orthmans three termination notices during this period. Idaho Power representatives never specifically advised the Orthmans of the winter moratorium period, relying instead on a "Consumer Information" sheet sent to all customers in September to fulfill its notification requirements.

On March 24, 1993, "troubleman" Harold Armstrong went to the Orthmans' residence to read the meter. At that time, Nancy handed him $400 cash as partial payment on the bill. The Orthmans were still in arrears by over $272. Although the Orthmans were scheduled for disconnection, customer service representative Joann Hartruff rescinded the termination order because the Orthmans had paid over half of their outstanding bill.

By early April, the Orthmans owed over $360 and had not made any further payment arrangements. Hartruff decided to terminate service. Public Utility Commission (PUC) regulations required Idaho Power to telephone or send written notification to customers seven days prior to terminating service. Hartruff, unable to contact the Orthmans by telephone on April 15, prepared a written notice which was mailed the following day. The back of the "Final Disconnect Notice" contained the following language:

If you are unable to pay your bill in full contact us. The Company will discuss optional payment plans or PAYMENT ARRANGEMENTS which may allow you to pay in reasonable installments and avoid disconnection of service.

On April 22, Armstrong went to the Orthmans' residence to disconnect the power. When he arrived, Nancy told him that she had paid $400 on the account. Armstrong telephoned Hartruff and requested that she talk with Nancy. Nancy asked Hartruff if she could make payment arrangements, insisting that she could pay the bill that day or on the following day. Hartruff told Nancy that the bill had to be paid in full at that time and she did not have the authority to make a payment arrangement. She did not inform Nancy about the company's standard payment arrangements. Without referring Nancy to any other person with authority, Hartruff stated that arrangement had to be made with the district manager, William Specht, who was out of the office. After speaking with Nancy, Hartruff instructed Armstrong to terminate the service. Shortly thereafter, Specht made one unsuccessful attempt to call the Orthmans, left the office, and was unavailable for the rest of the day.

Armstrong disconnected the Orthmans' power by using his "hot stick" to pull a fuse on the power line 26 feet above ground level. The elevation of the wires was eight feet above the minimum level required by the National Electrical Safety Code. Armstrong testified that, to terminate service, he also had the option of removing the actual meter. He testified that he used both methods routinely and considered both to be safe; but that pulling the fuse was quicker and easier. Armstrong also testified that he did not consider disconnecting the fuse a safety hazard to others because it was so high and because tampering with the wires was illegal.

Russell returned to the house shortly after the power was disconnected. He called Hartruff and asked for reconnection, promising full payment on May 3. Hartruff told him that power could be restored only after full payment was made on the account. After Russell unsuccessfully attempted to contact his employer for money, he returned to his yard. He found a long section of metal irrigation pipe, wrapped the bottom with electrical tape, and inserted a metal rod to the other end of the pole. Because the meter was still in place, closing the fuse would restore service through the meter. Russell raised the rod to the electrical circuit in an attempt to restore electrical service cut off by the defusing. He contacted the electrical circuit, and up to twenty thousand volts of electricity coursed through his body. Russell suffered severe burns and lost both legs and the use of both arms and both hands.

The Orthmans filed a complaint alleging that the negligence of Idaho Power in terminating and disconnecting the Orthmans' electrical service led to Russell's injuries. The district court granted Idaho Power's motion to dismiss for failure to state a claim. This Court reversed in *Orthman v. Idaho Power Co.*, 126 Idaho 960, 962, 895 P.2d 561, 563 (1995). On remand, the district court grant-

ed summary judgment for Idaho Power. This Court reversed in *Orthman v. Idaho Power Co.*, 130 Idaho 597, 601, 944 P.2d 1360, 1364 (1997).

Thereafter, the case went to a jury trial. The jury returned a special verdict finding Russell and Idaho Power each 50% negligent in causing the accident. The trial court entered judgment upon the special verdict, awarding nothing to the Orthmans. The trial court awarded Idaho Power $135 in discretionary costs and approximately $780 in costs as a matter of right. The Orthmans filed a timely notice of appeal.

## II.

## ANALYSIS

A. **Instructing the Jury that Diverting Power from a Power Company's Transmission Line Constituted Negligence Per Se Was Harmless Error.**

The trial court gave the following jury instruction, based on Section 18–4621 of the Idaho Code:

There was in force in Idaho a statute which provides that any person who causes connections to be made by means of any device to the power transmission lines of a power company for the purpose of diverting power from the power company without permission or authority to do so from that power company is guilty of a misdemeanor.

A violation of this statute is negligence, unless the jury finds that compliance with the statute was impossible, or the violation was something over which the party had no control, or the circumstance was an emergency not of the party's own making.

The Orthmans contend that the trial court erred in giving this jury instruction. First, they contend that because Russell only attempted to make, but did not actually make, a connection, his actions did not violate I.C. § 18–4621. In addition, they assert that the statute was intended only to protect power companies from persons stealing electricity. Since closing the fuse would cause electricity to flow through the meter, they contend, Russell was not stealing electricity and any

violation of the statute would not meet the requirements for negligence per se.

"This Court reviews jury instructions to determine whether the instructions, when considered as a whole, fairly and adequately present the issues of the case and state the applicable law. Reversible error occurs if an instruction misleads the jury or prejudices a party. Whether the jury instructions fairly and adequately present the issues and state the applicable law is a question of law over which this Court exercises free review." *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 51, 995 P.2d 816, 821 (2000) (internal quotations and citations omitted).

The Orthmans contend that Russell did not actually violate I.C. § 18–4621 because he only attempted, but did not succeed, in making a connection with Idaho Power's lines to restore his power. Although Russell did not succeed in *restoring power* through the meter, he did meet the elements of the statute. Through the rebar attached to the metal pole, Russell did in fact use a device to make a connection with Idaho Power's wires or cables, and he did in fact make this connection for the purpose of obtaining electric current. *See* I.C. § 18–4621. The statute does not require that the connection allow one to successfully obtain or divert power. *See id.*

The Orthmans also assert that Russell's actions did not constitute negligence per se. In order for violation of a statute to constitute negligence per se, four elements must be met. *Stott By and Through Dougall v. Finney*, 130 Idaho 894, 896, 950 P.2d 709, 711 (1997).

"First, the statute or regulation must clearly define the required standard of conduct; second, the statute or regulation must have been intended to prevent the type of harm the defendant's act or omission caused; third, the plaintiff must be a member of the class of persons the statute or regulation[ ] was designed to protect; and fourth, the violation must have been the proximate cause of the injury."

*Id.* Because Russell's negligence was raised as an affirmative defense, negligence per se

applies to Russell's conduct if (1) I.C. § 18–4621 clearly defined the required standard for Russell's conduct; (2) I.C. § 18–4621 was intended to prevent the type of harm that Russell's act caused; (3) Idaho Power was a member of the class that the statute was designed to protect; and (4) Russell's violation was a proximate cause of his injury.

■ Section 18–4621 of the Idaho Code makes it a misdemeanor to tamper with meters so that the meters do not record the full amount of electricity used. The statute also prohibits persons without the power company's "permission and authority" from "mak[ing] connections, or caus[ing] connections to be made, by wire or wires or by any other device, with the wires, cables or conductors, or any of them, [of the power company] for the purpose of obtaining or diverting electric current." I.C. § 18–4621. Therefore, the statute clearly defined the required standard for Russell's conduct. However, the legislative purpose for the statute was "[t]o prevent the wrongful diversion and obtaining of electric current and to prevent tampering with meters [ ] set up for the purpose of registering electric current." 1905 Idaho Sess. Laws p. 72. The aim of the statute was to prevent the theft of electricity and damage to power company property. Nothing within the statute or its legislative history indicates that it was enacted to protect unauthorized users of electricity from harm. Because I.C. § 18–4621 was not intended to prevent the type of harm that Russell's act caused, Russell's violation of the statute did not constitute negligence per se.

■ Although the trial court erred in instructing the jury that diverting power from the power company's transmission line was negligence per se, the erroneous instruction affected only the question of *whether* Orthman was or was not negligent. It did not instruct the jury as to the *degree* of negligence. It is clear under any reading of the facts that Orthman's actions were negligent. The jury was free to determine on its own the degree of negligence. Since the erroneous instruction would not mislead the jury as to the degree of negligence, the giving of the instruction was harmless error.

**B. The Evidence Before this Court Does Not Demonstrate that Admission of Testimony that Electrical Ratepayers Bore the Ultimate Burden of Idaho Power's Delinquent Customers Affected Orthman's Substantial Rights.**

Because Idaho Power district manager William Specht could not testify at trial, portions of his deposition testimony were read into the record. The deposition included the following exchange between Idaho Power's counsel and Specht:

Q. Who pays for this electrical service when you have customers that do not eventually pay their accounts?

A. The rest of the rate payers.

Outside the presence of the jury, the Orthmans objected to the introduction of this evidence, but the trial court admitted it. The Orthmans contend that the trial court abused its discretion in admitting the testimony because the material was irrelevant, prejudicial, and appealed to the financial self-interest of the jurors.

■ Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Relevant evidence is generally admissible. I.R.E. 402. This Court exercises free review over a trial court's determination of the relevance of testimony. *State v. Cross,* 132 Idaho 667, 670, 978 P.2d 227, 230 (1999); *State v. Raudebaugh,* 124 Idaho 758, 764, 864 P.2d 596, 602 (1993).

■ In this case *Idaho Power,* in an effort to show that it was not negligent in terminating the Orthmans' service, put on a great deal of evidence concerning whether its collection efforts against the Orthmans' delinquent account comported with its own internal procedures and with PUC regulations. The fact of the Orthmans' delinquency and the amount of that delinquency were undisputed. However, evidence concerning the identity of persons who ultimately paid for delinquencies, whether ratepayers or Idaho Power stockholders, was irrelevant to the reasonableness of the collection efforts. *Cf.*

*L & L Furniture Mart, Inc. v. Boise Water Corp.*, 120 Idaho 107, 109, 813 P.2d 918, 920 (Ct.App.1991) (holding that source of money used to keep the business afloat after it suffered flood damage was irrelevant to the issue of the amount of damages where business presented evidence of the amount of money required and the amount of interest paid). Because the testimony was not relevant, the trial court erred in admitting it.

 Even where a trial court has erred in admitting evidence, however, error is disregarded unless the ruling affected a substantial right of the party. *Burgess v. Salmon River Canal Co.*, 127 Idaho 565, 574, 903 P.2d 730, 739 (1995); *see also Hake v. DeLane*, 117 Idaho 1058, 1065, 793 P.2d 1230, 1237 (1990).

The appellants have provided this Court with only a limited transcript on appeal. Where an incomplete record is presented, missing portions of the record are presumed to support the action of the trial court. *Peasley Transfer & Storage Co. v. Smith*, 132 Idaho 732, 744, 979 P.2d 605, 617 (1999). From the record before this Court, it appears that the above ratepayer testimony was only a passing sentence in a four-day trial. No special emphasis was given to it in front of the jury. The sentence was not objected to in open court, it received no cross-examination, other Idaho Power employees did not echo the same information, and the limited transcript does not show that it was argued to the jury. Because no evidence before this Court shows that the ratepayer evidence unduly influenced the jury, this Court cannot find that the error in admitting the evidence affected Orthman's substantial rights. Therefore, the error will be disregarded.

### III.

### CONCLUSION

The trial court erred in instructing the jury that diverting power from a power company's transmission lines was negligence per se, but the error was harmless because it was clear from the facts that Orthman was negligent. Although the trial court erred in admitting the ratepayer evidence by concluding that it was relevant, the admission of the testimony did not affect Orthman's substantial rights. Therefore, the judgment of the trial court is affirmed. Costs to respondents. No attorney fees on appeal are awarded.

Chief Justice TROUT, Justices SILAK, SCHROEDER, and WALTERS concur.